COLLIN COUNTY SAVINGS & LOAN OF PLANO, TEXAS, Appellant,

v.

MILLER LUMBER CO., INC., Appellee.

No. 05–82–00526–CV.

Court of Appeals of Texas, Dallas.

June 2, 1983.

---

Lynn Phillips, Dallas, for appellant.

Howard Shapiro, Plano, for appellee.

Before STOREY, GUILLOT and STEW-ART, JJ.

STOREY, Justice.

This is an appeal from a suit to recover money that Miller Lumber Company deposited with Collin County Savings and Loan

in exchange for a $100,000 certificate of deposit. Collin Savings' appeal raises questions regarding the finality of the judgment, the propriety of recovery in conversion, the sufficiency of the evidence to support the award of interest damages, and the exclusion of an auditor's positive written confirmation that purportedly constitutes Mr. Miller's acknowledgment of his personal debt to the bank. Concluding that we have a final judgment and that the Collin Savings' points of error cannot be sustained, we affirm.

In 1975, Von Miller deposited $100,000 with Collin Savings on behalf of Miller Lumber Company, a corporation. Collin Savings in turn issued its certificate of deposit (account number 1300644–4) in the name of Miller Lumber Company. During the following year Von Miller individually borrowed $90,000 from Collin Savings and signed a promissory note payable to the bank. Miller did not sign this note in a representative capacity for the lumber company. However, the note recites that Miller "pledges [his] account . . . in said Association, No. 13–000644–4, as security for said debt and authorizes . . . in the event of any default . . . withdrawal . . . of the funds . . . for interest and principal payment." There is no evidence nor is it contended that the company authorized Miller to pledge its certificate to secure his debts.

In 1977 Miller defaulted on the note. In 1979 he attempted to withdraw the $100,000 deposit, presumably on behalf of the corporation. Collin Savings informed Miller that the deposit was collateral for Miller's promissory note and refused to return the deposit without offsetting the balance due on the note. Miller Lumber Company then filed suit to recover the deposit represented by the certificate, damages for the loss of the use of its money, punitive damages, and attorneys' fees. Collin Savings filed a counterclaim asserting "its right to judgment against account no. 13–000644–4 . . . to satisfy the unpaid balance on the note . . . ." The counterclaim did not seek a judgment on the note personally against Miller, but only sought to foreclose an interest in the certificate. Miller and his wife have had possession of the certificate at all times. Collin Savings' president testified that standard banking procedure for pledging a certificate of deposit as collateral for a loan called for Collin Savings to take possession of the certificate. *See First National Bank v. Lone Star Life Insurance Co.,* 524 S.W.2d 525, 530 (Tex.Civ.App.— Dallas), *writ ref'd n.r.e. per curiam,* 529 S.W.2d 67 (Tex.1975). Miller was not a party to the suit. After a trial before the court, the trial court's judgment decreed the release of the proceeds of the certificate to Miller Lumber Company and awarded it damages equivalent to its lost interest. This amounted to the difference between the prevailing market rate of interest, shown to be at least 14%, and the 7½% rate earned by the certificate during the period its proceeds were withheld. Attorneys' fees and post-judgment interest were also awarded.

▪ We are first confronted by the question of the finality of the trial court's judgment, which did not expressly deny relief on Collin Savings' counterclaim. We conclude that by decreeing the release of the deposit, the trial court determined by necessary implication that Collin Savings was not entitled to assert any claim to the funds of Miller Lumber Company in order to satisfy the personal note of Von Miller. *See Transceiver Corp. of America v. Ring-Around Products, Inc.,* 581 S.W.2d 712 (Tex. Civ.App.—Dallas 1979, no writ); *Kirkman v. Alexander,* 280 S.W.2d 365, 368 (Tex.Civ. App.—Austin 1955, writ ref'd n.r.e.). The counterclaim only sought a recovery by way of offset against the certificate. We are supported in our conclusion by the trial court's conclusion of law stating that Miller Lumber Company is not indebted in any amount to Collin Savings on account of Miller's personal note. A person is not liable on a note he has not signed. A corporation signs a note by the authorized signature of its agent. Tex.Bus. & Com.Code Ann. §§ 3.401(a), 3.403 (Vernon 1968) (Tex. UCC). Miller Lumber Company could not be liable on Miller's personal note because Miller did not sign the note in a representa-

tive capacity and it was not shown that Miller had authority to secure his personal debt with collateral consisting of funds of the corporation. Because we conclude there is a reviewable final judgment, we proceed to the merits of the appeal.

■ Collin Savings first contends that the judgment must be reversed and the cause remanded because the case was tried on a theory of conversion of the money or of the certificate and neither theory of conversion is possible because, respectively: (1) it is conceded that Collin Savings never had possession of the certificate, cf. *Montavon v. Alamo National Bank,* 554 S.W.2d 787 (Tex.Civ.App.—San Antonio 1977, no writ); and, (2) a suit for conversion of money is only maintainable if there is an obligation to return specific, identifiable currency rather than a debtor-creditor relationship. In support of those contentions Collin Savings urges the case was pleaded and tried on a theory of conversion. It relies on *First National Bank of Bellaire v. Hubbs,* 566 S.W.2d 375 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ), for the proposition that a depositor may not sue his bank for conversion of money because the deposit creates a general debtor/creditor relationship between the bank and the depositor.

■ While we agree with these contentions as proper statements of the law relating to a suit for conversion, we cannot agree that they are applicable here. This is true because we conclude that the lumber company's pleadings and evidence support a theory of recovery of funds on deposit. *See, e.g., Sears v. Continental Bank & Trust Co.,* 562 S.W.2d 843 (Tex.1977); *Mesquite State Bank v. Professional Investment Corp.,* 488 S.W.2d 73 (Tex.1972); *City National Bank of Bryan v. Gustavus,* 130 Tex. 83, 106 S.W.2d 262 (1937), aff'g 77 S.W.2d 565 (Tex.Civ.App.—Waco 1934); *Canyon Lake Bank v. New Braunfels Utilities,* 638 S.W.2d 944, 945 (Tex.Civ.App.—Austin 1982, no writ). The court in *Hubbs* conclud-ed that the plaintiff's recovery could not be sustained on an alternative theory of wrongful dishonor because some evidence of that claim was lacking. Here, the judgment decreed relief consistent with a claim for the recovery of a deposit and this claim was supported by the evidence. Therefore, we cannot say that the suit was tried on an erroneous theory. *See Hubbs,* 566 S.W.2d at 378; *Gustavus,* 106 S.W.2d at 265.

■ Collin Savings next complains of the exclusion of exhibit number 2, an auditor's confirmation letter signed by Von Miller by which he supposedly acknowledged a $90,-000 debt to the bank. Assuming the exhibit is proof of the debt, it is not probative of Collin Savings' right to offset Miller's personal debt against the deposit of the corporation. Collin Savings did not have a right to apply the deposits of a third party to offset the debts of a depositor when it knew the deposits belonged to a third party. Hence, we conclude that the exhibit was properly excluded. *See Steere v. Stockyards National Bank,* 113 Tex. 387, 256 S.W. 586, 589–92 (1923); *accord, South Central Livestock Dealers, Inc. v. Security State Bank,* 614 F.2d 1056, 1059–60 (5th Cir.1980) (applying Texas law). *See also National Indemnity Co. v. Spring Branch State Bank,* 162 Tex. 521, 348 S.W.2d 528, 529 (1961); *First National Bank v. Lone Star Life Insurance Co.,* 524 S.W.2d at 527–29.

■ Collin Savings next complains of the trial court's award of $15,636.80 as damages for the loss of use of the $100,000 deposit improperly retained by it. Aside from an attack on the sufficiency of the evidence, Collin Savings contends, citing *Smith v. National Resort Communities, Inc.,* 585 S.W.2d 655, 660 (Tex.1979), that this award permitted an improper recovery of prejudgment interest because the applicable legal rate of interest was 6%, Tex.Rev.Civ.Stat.Ann. art. 5069–1.03 (Vernon Supp. Pamphlet 1971–1982),[1] and the lumber company was paid

1. Article 5069–1.03 provides that "[w]hen no specified rate is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and con-tracts. . . ." While this provision is not expressly applicable, appellant relies upon the cases which adopt the legal rate of interest "by analogy . . . as the standard by which . . . to

7½% during the entire time the funds were withheld. This argument ignores the difference between prejudgment interest and interest as a measure of actual or consequential damages flowing directly or indirectly from the breach of an agreement to pay or loan money. *Davis v. Small Business Investment Co.,* 535 S.W.2d 740, 743 (Tex.Civ.App.—Texarkana 1976, writ ref'd n.r.e.). *See generally* 17 Tex.Jur.2d *Damages* §§ 24, 53, 54 (1960). *Compare Smith v. National Resort Communities,* 585 S.W.2d 655, 660 (Tex.1979), *with Farmers & Merchants State Bank v. Ferguson,* 617 S.W.2d 918, 921–22 (Tex.1981), *and F.B. Collins Inv. Co. v. Sallas,* 260 S.W. 261, 264 (Tex.Civ. App.—Texarkana 1924, writ ref'd). From the date of the wrongful offset until the final judgment, the trial court allowed 6½% interest on the deposit in addition to the 7½ % contractual rate already satisfied by Collin Savings. The trial court allowed this recovery as consequential damages for the loss of the use of the money in higher yield certificates. The lumber company proffered evidence from which the trial court could have concluded that the loss of alternative investments in higher rate certificates must have been within the reasonable contemplation of the parties when Miller Lumber Company obtained the certificate and renewed it annually. The evidence further supports the conclusion that had Collin Savings performed its part of the bargain, the lumber company would have reinvested the principal in certificates at the prevailing market rate of at least 14%. We conclude that this lost profit was a reasonably foreseeable consequence of a wrongful offset where the customer had at least four other of the bank's certificates earning interest at the higher rate. *See, e.g., Commercial Credit Equipment Corp. v. Elliott,* 414 S.W.2d 35, 42–44 (Tex.Civ.App.—Eastland 1967, writ ref'd n.r.e.); *cf. Farmers & Merchants State Bank v. Ferguson,* 617 S.W.2d 918, 921–22 (Tex.1981) (allowing $1,500 loss of use of $7,000 for about two years because bank's freeze on deposits caused depletion of working capital and inventory of plaintiff's business); *Ligon v. Davis Hardware,* 492 S.W.2d 374, 376 (Tex. Civ.App.—Austin 1973, no writ) (theft of merchandise foreseeable damage of defective burglar alarm). *See also South Central Livestock Dealers,* 614 F.2d at 1060–61.

In *Elliott,* the court allowed the jury's award of $25,000 as damages for the loss of use of cotton harvesting equipment wrongfully sequestered based on jury findings that six percent interest on the value of the property wrongfully sequestered would not adequately compensate the plaintiff for the loss of its use. 414 S.W.2d at 43. The court permitted the farmer to recover special damages for the loss of profits he would have earned from the use of the sequestered equipment during the harvesting season. *Id.* at 44. More recently in *Ferguson* the Texas Supreme Court permitted recovery for the loss of use of bank deposits that the bank wrongfully froze because the plaintiff's business suffered from the lack of working capital which caused a reduction of inventory. 617 S.W.2d at 922. The recovery in *Ferguson* appears to be for special damages for the wrongful dishonor of checks drawn on the frozen account. *Id.* at 921. Here, the special damages were measured by the value of the use of the lump sum of $100,000, measured by the interest it could have earned just as four or five other such sums of the lumber company were earning.

▮ Simply because special damages are measured by the interest rate shown to be a reasonably foreseeable use of funds wrongfully retained does not require the interest rate to be limited to the legal rate ordinarily allowed as prejudgment interest under article 5069–1.03 when a contract does not specify an interest rate. For example, a plaintiff may recover actual damages for breach of a contract to pay or lend money measured by any difference between the

---

assess damages for detention of money." *Smith v. National Resort Communities,* 585 S.W.2d 655, 660 (Tex.1979). However, those cases do not address the issue of an award of special or consequential damages. *See, e.g., Farmers & Merchants State Bank v. Ferguson,* 617 S.W.2d 918, 921–22 (Tex.1981).

contractual rate of interest and the rate of interest plaintiff is required to pay to obtain the money from another source. In such cases he may also recover other special damages reasonably within the contemplation of the parties. *Davis v. Small Business Investment Co.,* 535 S.W.2d 740, 743 (Tex.Civ.App.—Texarkana 1976, writ ref'd n.r.e.). *See generally* Annot., 4 A.L.R. 4th 682 (1981). The interest recoverable in these lending agreement cases is not limited to the legal rate of interest but only by the usury statutes.

We conclude that the evidence supports the recovery of special damages measured by the difference between the 14% market rate of interest and the contractual rate of recovery.[2] Collins Savings' president confirmed that like certificates were earning between 14% and 19% interest at the time of trial. Miller testified that his other Collin Savings certificates were earning interest within that range. The trial court chose the lowest market interest rate in evidence.

Citing *Ennis v. Interstate Distributors, Inc.,* 598 S.W.2d 903 (Tex.Civ.App.—Dallas 1980, no writ), Collin Savings also contends, without a specific point of error, that the award of "prejudgment" interest is also improper because the amount to be recovered was not "liquidated or calculable at a specific time." Because we conclude that this was an award of special damages rather than prejudgment interest, we are not limited by this rule, but, in any event, the evidence demonstrates that the principal sum of $100,000 was recoverable on the specific date that Miller requested its return.

■ Finally, Collin Savings complains of the award of attorneys' fees. We conclude that, because recovery of the deposit was proper, the award of attorneys' fees is also proper under Tex.Rev.Civ.Stat.Ann. art. 2226 (Vernon Supp.1982–1983).

Affirmed.

2. We find to be distinguishable a recent case we encountered in the course of our research, *Canyon Lake Bank v. New Braunfels Utilities,* 638 S.W.2d 944 (Tex.Civ.App.—Austin 1982, no writ), because the court did not reach the issue of special damages, of which there was no evidence in the case.