OPINION
ASHWORTH, Justice.
This is an appeal from a take nothing judgment rendered against appellants in their breach of contract and deceptive trade practice suit against their architect who provided them with home remodeling plans.
Judgment reversed and cause remanded for a new trial.
Appellants desired to have an older home remodeled, including construction of a second floor. Appellee furnished plans for the remodeling. The plans were drawn on the premise that the existing house was of brick veneer construction — the inner wooden wall being the support for the roof. A contractor was employed to perform the work and he discovered the house was of full masonry construction — the outer wall providing support for the roof and such outer wall so deteriorated it could not be utilized. The condition was such that it rendered remodeling unfeasible and appel-lee recommended the existing house be demolished.
Appellants’ suit alleged breach of contract, violation of the Deceptive Trade Practices Act, and negligence on the part of appellee; they sought money damages and attorney fees. The case was tried to a jury which found:
1.Appellee agreed to inspect the premises to determine what remodeling was feasible, but that he did not fail to make such inspection.
2. Appellee agreed to determine what remodeling was feasible but he did not make an express warranty that he would make such determination and he did not fail to make such determination.
3. Appellee represented his plans would be suitable for such remodeling; the plans were not suitable and were a producing cause of the inability of appellants to use the plans.
4. Appellee did not fail to inspect to determine what remodeling was feasible.
5. On or before December 26, 1977, appellants knew, or should have known, the plans could not reasonably be used for the remodeling.
6. The inability of the plans to be used was not the result of a bona fide error.
7. Appellants sustained $5,500.00 in damages, and $4,000.00 in attorney fees through trial. The jury found zero attorney fees for appeal to the Court of Appeals and zero for appeal to the Supreme Court of Texas.
The trial court rendered judgment that appellants take nothing by their suit, the judgment stating that the verdict of the jury was for appellee. Such judgment and statement necessarily includes a determination by the trial court that appellants’ cause of action was barred by the two-year statute of limitations as alleged by appel-lee; such determination is the subject of appellants’ first point of error.
In order to consider appellants’ first point of error we must first determine upon what theory appellants would be entitled to recover if there were no limitations question. The only issues answered in a manner entitling appellants to recover are:
8. Appellee represented his plans would be suitable.
9. The plans were not suitable.
10. The unsuitability was a producing cause.
15. (Defensive issue) The inability of use of the plans was not the result of a bona fide error.
The answers to these special issues would entitle appellants to recover on the theory of breach of contract and on the *593 theory of violation of the Texas Deceptive Trade Practices — Consumer Protection Act. We must now determine how recovery under either theory is affected by the limitations question.
A cause of action for misrepresentation is considered an action on a debt not evidenced by an instrument in writing and subject to the provisions of former TEX. REV.CIV.STAT.ANN. art. 5526(4) (Vernon 1958), repealed by Act of June 16,1985, ch. 959, sec. 9(1), 1985 Tex.Sess.Law Serv. 7043, 7218 (Vernon) (presently located at TEX.CIV.PRAC. & REM.CODE ANN. sec. 16.004 (Vernon Pamph.1986)). Vergal Bourland Home App. v. Altkeimer & Baer, Inc., 362 S.W.2d 201, 203 (Tex.Civ.App.—Fort Worth 1962, writ ref’d n.r.e.); Lacy v. Carson Manor Hotel, 297 S.W.2d 367, 370 (Tex.Civ.App.—Dallas 1956, writ ref'd n.r.e.).
Prior to August 27, 1979, a cause of action under the Deceptive Trade Practices Act, TEX.BUS. & COM.CODE ANN. sec. 17.41-17.62, (Vernon Pamph.1986), was governed by art. 5526(4) unless the representation was evidenced by an instrument in writing. Marcotte v. American Motorists Ins. Co., 709 F.2d 378, 380 (5th Cir. 1983); Jim Walter Homes v. Chapa, 614 S.W.2d 838, 840-41 (Tex.Civ.App.-Corpus Christi 1981, writ ref'd n.r.e.)
The cause of action under either theory was governed by the limitations period provided by art. 5526(4) as it existed at the time of the accrual of the cause of action, on or before December 26, 1977, as found by the jury. At that time such article provided that actions for debts not evidenced by an instrument in writing should be commenced within two years of the accrual of the cause of action. Such article was amended effective August 27, 1979, deleting this provision, and art. 5527 was amended to provide a four-year limitations period to all actions for debt. See Law of Feb. 5, 1841, 1841 Tex.Gen.Laws 163, 2 H. GAMMEL, LAWS OF TEXAS 627 (1898), amended by Act of June 13, 1979, ch. 716, sec. 1, 1979 Tex.Gen.Laws 1768, 1768-69. Appellants commenced their suit against appellee on December 27, 1979.
Section 17.56A was added to the Deceptive Trade Practices Act, TEX.BUS. & COM.CODE ANN. (Vernon Pamph.Supp. 1986), effective August 27,1979. Such section provides a two-year statute of limitations for actions brought under the act (the time may be extended for 180 days if the delay was knowingly caused by the defendant).
Appellants’ lawsuit was not commenced within two years of the accrual of their cause of action, their original petition being filed on December 27, 1979. However, at the time of the filing of their petition the limitations statute provided suits for debt should be commenced within four years of their accrual. See art. 5527. Appellants’ first point of error contends the trial court erred in rendering judgment for appellees because neither of the two causes of action involved in appellants’ suit was barred by the two-year statute. Appellants argue their suit is governed by the 1979 amendment to art. 5527, increasing the limitations period to four years.
The question before us with regard to appellants’ common law cause of action was addressed in National Mar-Kit, Inc. v. Forest, 687 S.W.2d 457 (Tex.App.—Houston [14th Dist.] 1985, no writ). While a note had been executed in that case, the trial proceeded on the basis of an oral obligation to repay a loan. The loan was made on November 27, 1978, and the cause of action accrued on that date. Suit was filed on August 5, 1981. The court held that when the two-year statute of limitations period runs prior to the amendment extending the statute to four years, art. 5527 cannot be applied. Id. at 460, citing Smith v. Kirkwood and Hunter Elec. Co., Inc., 635 S.W.2d 171 (Tex.App.—Houston [1st Dist.] 1982, no writ).
The opinion continues and holds the result changes when the act amending arts. 5526 and 5527 took effect before appellee’s action was barred under the two-year rule because appellant’s defense of limitations *594 did not become a vested right until the limitation period had actually run. Id.
In the instant case, appellee never acquired a vested right to assert the two-year limitations statute as a defense to appellants’ common law action since the period was increased to four years before the two years ha.d expired. The limitations statute relates to remedies or procedure and the legislature has full control over the mode, time and manner of prosecuting suits. Falls v. Key, 278 S.W. 893, 896 (Tex.Civ.App.—Fort Worth 1925, writ dism’d). Appellants’ first point of error is sustained with regard to their common law cause of action.
A different result is reached with regard to appellants’ cause of action under the Deceptive Trade Practices Act. The two-year statute of limitations, art. 5526(4), applied to such cause of action; the enactment of sec. 17.56A had the effect of restating the applicability of the two-year period (with a provision for 180-day extension). It follows that appellants’ cause of action under the Deceptive Trade Practices Act was barred by the running of the two-year period.
Having determined appellants were entitled to whatever judgment on their common law action as was justified by the jury’s answers to the special issues, we now look to such answers and the points of error directed toward them.
In point of error nine, appellants assert that the jury’s answer of $5,500.00 to the special issue which inquired about appellants’ actual damages, is so contrary to the great weight and preponderance of the evidence as to be clearly inadequate and unjust.
In reviewing a point of error asserting that a finding is “against the great weight and preponderance” of the evidence, we must consider all of the evidence, both the evidence which tends to prove the existence of a vital fact as well as evidence which tends to disprove its existence. See Ford Motor Co. v. Nowak, 638 S.W.2d 582, 585 (Tex.App.—Corpus Christi 1982, writ ref’d n.r.e.). So considering the evidence, if a jury finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained. In Re King’s Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). This is true even though the finding is supported by more than a scintilla of evidence and even though reasonable minds could differ about the conclusion to be drawn from the evidence. Ford Motor Co., 638 S.W.2d at 585.
In connection with this special issue, the jury was instructed that in determining the amount of damages, it may only consider:
[Tjhose losses, if any, which the Plaintiffs suffered as the natural, probable and foreseeable consequences of their inability, if any, to use the plans and specifications in question to remodel the house located at 1134 Mistletoe Drive.
Appellants introduced into evidence ten checks made payable to appellee, totaling $10,763.76. These checks represented payments made by appellants for the time period beginning January 28, 1976 and ending November 4, 1977. Additionally, appellants introduced into evidence fifteen checks from themselves as payors, payable to various other individuals or companies, totaling $2,527.07, and spanning the same basic time period. These sums were for work or services performed in connection with the remodeling process.
Juries are the exclusive judges of the credibility of the witnesses and the weight to be given their testimony. Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547, 549 (1962). Further, it is the jury’s province to resolve conflicts and inconsistencies in the testimony of any one witness as well as in the testimony of different witnesses, Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561, 563 (1952), and the jury may believe testimony in part and reject it in another part. Creech v. Thompson, 156 Tex. 561, 297 S.W.2d 817, 820 (1957).
We wholeheartedly recognize the validity of the fundamental principles stat *595 ed above. However, in the instant ease we are confronted with the jury’s answers that appellee had represented his plans would be suitable, the plans were not suitable, which unsuitability was a producing cause of appellants' damages, and the inability of use of the plans was not the result of a bona fide error. When we combine these answers with appellants' twenty-five checks amounting to $13,290.88 expended by appellants as total actual damages, we hold that the jury’s answer of $5,500.00 as the amount which would fairly compensate appellants for their actual damages, is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. Accordingly, appellants’ point of error nine is sustained.
Appellants’ points of error ten and eleven concern alleged error with regard to special issues which were submitted to the jury inquiring as to reasonable attorney fees for an appeal to this court and the Supreme Court of Texas. The jury returned an answer of zero as to each question. Appellants’ attorney testified as to the legal services performed and reasonable fees for those services. He was vigorously cross-examined as to services performed through the trial. While he testified a reasonable fee for these services would be $12,500.00, the jury returned an answer of $4,000.00. The attorney testified a reasonable fee for an appeal to the Court of Appeals would be $2,500.00, and $2,000.00 for an appeal to the Supreme Court of Texas. There was no cross-examination as to the last two figures.
Generally, it is the province of the jury to determine what is the reasonable value of an attorney’s services. Gulf Paving Co. v. Lofstedt, 144 Tex. 17, 188 S.W.2d 155, 160 (1945). The jury may take into consideration the facts before them as they relate to the services rendered, as well as the estimates made by expert witnesses. Rocha v. Ahmad, 676 S.W.2d 149, 157 (Tex.App.-San Antonio 1984, writ dism’d). While the jury is the sole judge of the credibility of the witness and the weight to be given his testimony, in a case such as this, where the question definitely calls for an affirmative answer, and there is testimony which is unquestioned and would support an answer, the jury does not have an unbridled right to completely ignore such testimony. In the instant case, the answers of the jury to the two issues in question were so contrary to the greater weight and preponderance of the evidence so as to be manifestly wrong and unjust. Elizabeth-Perkins, Inc. v. Morgan Exp., Inc., 554 S.W.2d 216, 219 (Tex.Civ.App.-Dallas 1977, no writ); First Texas Sav. Ass’n of Dallas v. Dicker Ctr., 631 S.W.2d 179, 188 (Tex.App.—Tyler 1982, no writ). Appellants’ points of error ten and eleven are sustained.
Our holdings with regard to appellants’ points of error one, nine, ten, and eleven require a reversal of the trial court’s judgment and a remand of the cause for a new trial. We have examined each of appellants’ remaining points of error and appel-lee’s cross-points of error and without discussion each is overruled.
Judgment reversed and cause remanded for new trial on appellants’ common law breach of contract cause of action.